UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **PROJECT ON GOVERNMENT OVERSIGHT, INC.** <br> 1100 13th Street, NW <br> Suite 800 <br> Washington, DC 20005 <br><br> **Plaintiff**, <br><br> v. <br><br> **OFFICE OF MANAGEMENT AND BUDGET,** <br> 725 17th St NW, <br> Washington, DC 20503 <br><br> **Defendant.** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. |

## COMPLAINT

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Declaratory Judgment Act, 28 U.S.C. §§ 220 and 2202, for injunctive, declaratory, and other appropriate relief. Plaintiff Project On Government Oversight, Inc. ("POGO") challenges the failure of the Office of Management and Budget ("OMB") to process on an expedited basis and produce all non-exempt documents responsive to a FOIA request POGO filed seeking records related to the staffing of OMB by noncareer political appointees, special government employees, and individuals affiliated with the Department of Government Efficiency ("DOGE"), including ethics records, position descriptions, and specified communications involving high-level OMB officials.

2. This case seeks declaratory relief that OMB is in violation of the FOIA 5 U.S.C. § 552(a)(6)(E)(i), by failing to process and produce to Plaintiff all non-exempt documents responsive to POGO's expedited requests for records and for injunctive relief ordering OMB to process and release to POGO immediately the requested records.

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(C)(i). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

4. Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

5. Plaintiff POGO is a nonpartisan independent organization based in Washington, D.C. and organized under section 501(c)(3) of the Internal Revenue Code. Founded in 1981, POGO investigates, exposes, and champions reforms on systemic corruption, abuse of power, and waste. POGO's investigators and journalists take leads and information from insiders and verify the information through investigations using FOIA, interviews, and other fact-finding strategies.

6. POGO's investigative work has been recognized by Members of Congress, executive branch officials, and professional journalism organizations. For instance, in 2015, POGO won the Robert D.G. Lewis Watchdog Award, the Society of Professional Journalists Washington, D.C. Professional Chapter's highest journalistic award, for reporting on the Department of Justice's opaque system for handling allegations of attorney misconduct within its ranks. In 2018, POGO won an award from the Society for Advancing Business Editing & Writing for its investigative series scrutinizing the government's oversight of offshore drilling. In 2025, POGO's most recent season of its investigative podcast series that examined the

Department of Homeland Security's focus on immigrants and neglect of the threat of domestic violent extremism won two Gold awards from the Signal Awards, a Gold from the Davey Awards, and won third place in the Society for Features Journalism's narrative podcast category. POGO extensively used records obtained under FOIA for all these investigations.

7. Defendant OMB is a federal agency within the meaning of FOIA, 5 U.S.C. § 552(f), and has possession, custody, and control of the records POGO seeks in this action.

## STATUTORY AND REGULATORY BACKGROUND

8. The FOIA requires federal agencies, upon request, to make records "promptly available to any person," 5 U.S.C. § 552(a)(3)(A), unless one or more specific statutory exemptions apply.

9. The agency must provide the public records when they are requested in order "to ensure an informed citizenry, vital to the functioning democratic society." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).

10. For non-expedited requests an agency must make a determination on a FOIA request within twenty business days and notify the requester of which of the requested records it will release, which it will withhold, and why, and the requester's right to appeal the determination to the agency head. 5 U.S.C. § 552(a)(6)(A)(i).

11. The FOIA also requires agencies to promulgate regulations that provide for expedited processing of FOIA requests where the requester demonstrates a "compelling need" as well as "other cases determined by the agency." 5 U.S.C. § 552(a)(6)(E)(i). The FOIA defines "compelling need" to include requests "made by a person primarily engaged in disseminating information" where there is an "urgency to inform the public concerning actual or alleged Federal Government activity." *Id.* at § 552(a)(6)(E)(v)(II).

12. OMB's FOIA regulations at 5 C.F.R. § 1303.40(e) provide that requests and appeals must be afforded expedited processing when OMB determines that the lack of expedited treatment could reasonably be expected to pose an imminent threat to the life or physical safety of an individual; when there is an urgency to inform the public about an actual or alleged Federal Government activity; when failure to respond expeditiously would result in the loss of due process rights in other proceedings; or when there are possible questions, in a matter of widespread and exceptional public interest, about the Government's integrity that affect public confidence. *Id*. at § 1303.40(e)(1)(i)–(iv). The regulations further require that a requester seeking expedited processing submit a detailed statement, certified to be true and correct to the best of the requester's knowledge and belief, explaining the basis for expedition, though OMB may waive this certification requirement at its discretion. *Id*. at § 1303.40(e)(3).

13. OMB must decide whether to grant expedited processing and notify the requester within 10 calendar days of the request. *Id*. at § 1303.40(e)(4). If granted, OMB must prioritize the request and process it as soon as practicable, and if denied, courts in this district have held that a requester is not required to exhaust administrative remedies before seeking judicial review of an agency's denial of expedited processing. *Elec. Privacy Info. Ctr. v. Dep't of Defense*, 355 F. Supp. 2d 98, 100 n.1 (D.D.C. 2004) ("Plaintiff is not required to pursue an administrative appeal before seeking judicial review of its request for expedited processing of a FOIA request.").

14. Agencies are required to make a determination on a request for expedition within 10 calendar days "after the request." 5 U.S.C. § 552(a)(6)(E)(ii)(I). OMB regulations mirror this requirement. 5 C.F.R. § 1303.40(e)(4).

15. Agency decisions to deny a request for expedition are subject to judicial review "based on the record before the agency at the time of the determination." 5 U.S.C. § 552(a)(6)(E)(iii).

16. If an agency does not respond to a FOIA request by the statutory deadline, including a request for expedition, the requester is deemed to have exhausted administrative remedies and may immediately pursue judicial review. 5 U.S.C. §§ 552(a)(6)(C)(i), 552(a)(4)(B).

## FACTUAL BACKGROUND

17. In November 2024, then-presidential candidate Donald Trump announced that, if reelected, he would create a new federal entity called the Department of Government Efficiency. Elena Moore, Camila Domonoske, and Jeongyoon Han, "Trump taps Musk to lead a 'Department of Government Efficiency' with Ramaswamy," *NPR*, November 12, 2024, https://www.npr.org/2024/11/12/g-s1-33972/trump-elon-musk-vivek-ramaswamy-doge-government-efficiency-deep-state#:~:text=Trump%20taps%20Musk%20to%20lead,%2C.

18. In January 2025, President Trump issued an executive order formally establishing DOGE. Exec. Order No. 14,158, 90 Fed. Reg. 8441 (Jan. 29, 2025). He appointed Elon Musk, CEO of Tesla, SpaceX, and several other companies, as the head of the newly formed department, stating that its mission would be to eliminate wasteful government spending. Donald J. Trump (@realDonaldTrump), Truth Social (November 12, 2024, 18:46 ET), https://truthsocial.com/@realDonaldTrump/posts/113472884874740859.

19. In February 2025, media outlets reported on investigations into Musk's existing government contracts, particularly with the U.S. Department of Defense (DoD). As of that time, Musk's companies, including SpaceX, had received an estimated $22 billion in DoD contracts,

with the true total believed to be higher due to classified agreements. Mike Stone, Joey Roulette, "Elon Musk's US Department of Defense Contracts," *Reuters*, February 11, 2025, https://www.reuters.com/world/us/elon-musks-us-department-defense-contracts-2025-02-11/.

20. Through March and April 2025, DOGE aggressively pursued structural changes to the federal bureaucracy, including efforts to dismantle the U.S. Agency for International Development and the Consumer Financial Protection Bureau. Jonathan Swan, Maggie Haberman, Nicholas Nehamas, Theodore Schleifer, and David A. Fahrenthold, "A Subdued Musk Backs Away From Washington, but His Project Remains," *The New York Times*, April 23, 2025, https://www.nytimes.com/2025/04/23/us/politics/elon-musk-doge-trump.html. Reports indicated that OMB was instrumental in evaluating or facilitating some of these agency cutbacks, suggesting DOGE's agenda was increasingly channeled through existing executive infrastructure. *See* Bridget C.E. Dooling, "Spending, regulations and DOGE: OMB director has vital role," *OSU.edu*, January 24, 2025, https://news.osu.edu/spending-regulations-and-doge-omb-director-has-vital-role/#:~:text=OMB%20plays%20a%20critical%20role,not%20do%20its%20work%20alone.

21. In late April 2025, Musk announced that he would step back from his role at DOGE to focus on Tesla, following a sharp drop in the company's first-quarter profits. Bernard Condon, *Associated Press*, "Musk says he'll step back from DOGE to focus on Tesla as company sees 71 percent drop in Q1 profits," *PBS News*, April 22, 2025, https://www.pbs.org/newshour/politics/musk-says-hell-step-back-from-doge-to-focus-on-tesla-as-company-sees-71-percent-drop-in-q1-profits/. During his tenure, Musk served as a special government employee, a category subject to specific ethics and conflict-of-interest rules, yet it is unclear what, if any, ethics agreements or waivers were executed or made public during his

tenure. *See* Joe Hernandez, "Trump hired Musk as a 'special government employee.' Here's what that means," *NPR*, February 13, 2025, https://www.npr.org/2025/02/13/nx-s1-5293124/special-government-employee-trump-musk-doge.

22. Despite formally leaving his role, Musk stated publicly that he would "continue to be a friend to the president." Aaron Navarro, "Elon Musk leaving DOGE, but he'll continue to advise Trump, White House says," *CBS News*, May 29, 2025, https://www.cbsnews.com/news/elon-musk-signals-his-time-leading-doge-is-coming-to-an-end/. The centralized DOGE entity was dismantled ahead of its planned July 4, 2026 dissolution date. Rebecca Schneid, "DOGE disbanded: Elon Musk's cost-cutting project quietly ended ahead of schedule," *Time*, November 25, 2025, https://time.com/7336327/doge-disbanded-elon-musk/.

23. DOGE continued working within agencies after Musk's departure, driving cuts and structural changes that impacted agency operations, such as sending USAID staff home and targeting federal programs. Richard Johnstone, "DOGE 'deeply engaged in US government transformation' despite reports of closure," *Global Government Forum*, April 12, 2025, https://www.globalgovernmentforum.com/doge-deeply-engaged-in-us-government-transformation-despite-reports-of-closure/. After Musk stepped back, a Treasury Department inspector general began investigating DOGE's efforts to obtain private taxpayer data and other sensitive information. William Turton, Avi Asher-Schapiro, Christopher Bing, and Andy Kroll, "Inspector General Probes Whether Trump, DOGE Sought Private Taxpayer Information or Sensitive IRS Material," *ProPublica*, April 25, 2025, https://www.propublica.org/article/trump-doge-irs-treasury-tigta-inspector-general-probe

24. Following Musk's departure, concerns increased regarding the continued influence of DOGE's agenda within the federal government, particularly through OMB. Russell

Vought, director of OMB, told a House Appropriations Committee hearing in June 2025 that a goal would be to have DOGE "far more institutionalized at the actual agency" level moving forward. Shannon Bond, Stephen Fowler, "Elon Musk may be gone but DOGE isn't done remaking the federal government," *NPR*, June 25, 2025, [https://www.npr.org/2025/06/16/nx-s1-5431926/doge-future-elon-musk#:~:text=Members%20of%20Musk%27s%20core%20team,they%20feel%20went%20too%20far](https://www.npr.org/2025/06/16/nx-s1-5431926/doge-future-elon-musk#:~:text=Members%20of%20Musk%27s%20core%20team,they%20feel%20went%20too%20far).

25. Despite OMB's central role in advancing DOGE's policy objectives, there has been no public accounting of who among the DOGE teams transitioned to formal roles within OMB, what their qualifications are, or whether any ethics agreements or conflict checks were conducted. Rebecca Beitsch, "Democrats launch probe into DOGE staffers embedded across agencies," *The Hill*, August 7, 2025, [https://thehill.com/homenews/senate/5441656-doge-staffers-hiring-democrats-investigation/#:~:text="In%20addition,%20all%20federal%20hires,hired%20as%20special%20government%20employees.&text=Copyright%202026%20Nexstar%20Media%20Inc,DOGE%20staffers%20embedded%20across%20agencies?&text=How%20positive%20or%20negative%20is,of%20AI%20in%20the%20workplace](https://thehill.com/homenews/senate/5441656-doge-staffers-hiring-democrats-investigation/).

26. As many DOGE-affiliated personnel may now be influencing federal policy through OMB while maintaining ties to private companies with active federal contracts, there is a pressing public interest in whether these individuals were vetted for conflicts of interest or received ethics waivers, and whether they are qualified for their roles.

27. In addition, a Department of Justice ("DOJ") court filing disclosed on January 16, 2026, confirmed whistleblower allegations that DOGE-affiliated personnel embedded within the Social Security Administration ("SSA") had mishandled sensitive federal data and engaged in partisan political activity without the knowledge or approval of SSA leadership. Notice of

Corrections to the Record at 2, *American Federation of State, County and Municipal Employees v. Social Security Administration*, No. 25-1411 (4th Cir. 2025). These revelations confirm that DOGE personnel bypassed internal safeguards and compromised sensitive data, raising urgent public interest concerns about DOGE's operational history within the federal government.

28. Moreover, recent reporting shows that Musk's artificial intelligence chatbot Grok, embedded in the social media platform X, has been integrated into Pentagon networks alongside Google's generative AI systems. Konstantin Toropin and David Klepper, "Pentagon embraces Musk's Grok AI chatbot as it draws global outcry," *PBS News*, January 13, 2026, https://www.pbs.org/newshour/world/pentagon-embraces-musks-grok-ai-chatbot-as-it-draws-global-outcry. In light of this news, Musk's control over both the underlying AI model and the platform through which it is deployed raise public concerns regarding platform concentration, conflicts of interest, and governmental reliance on privately controlled AI infrastructure and warrants heightened transparency.

*Plaintiff's Expedited FOIA Request*

29. On May 16, 2025, POGO submitted a FOIA request to OMB using the online portal FOIA.gov.

30. Specifically, Plaintiff requested records documenting all noncareer and limited-term senior executives, special government employees, and Schedule C employees (including Temporary Transition Schedule C employees) who began on or after January 20, 2025. POGO also sought all OGE Form 278e reports, ethics agreements, ethics waivers, individual position descriptions, and resumes for all noncareer and limited-term senior executives who began on or after that date. It also requested all ethics agreements, ethics waivers, individual position descriptions, and resumes for all special government employees and Schedule C employees

(including Temporary Transition Schedule C employees) who began on or after January 20, 2025.

31.     POGO also requested all email communications from January 20, 2025 through the present ("present" is defined as the date of the search; email communications includes emails, email attachments, complete email chains, calendar invitations, and calendar invitation attachments) and text messages (including complete text message threads or conversations) or messages on messaging platforms from January 20, 2025 through the present (such as Signal, Mattermost, Microsoft Teams, Slack, GChat or Google Hangouts, Lync, Skype, X (formerly Twitter) direct messages, Facebook messages, WhatsApp, Telegram, or Parler) sent or received by OMB Director Russell Vought, OMB Deputy Director Dan Bishop, OMB Deputy Director Eric Ueland, OMB Chief Information Officer Greg Barbaccia, and OMB General Counsel Mark Paoletta regarding the terms "Elon Musk", "Department of Government Efficiency", "DOGE", "Amy Gleeson", "Andreessen", "artificial intelligence", "xAI", "Tesla", "SpaceX", "Space Exploration Technologies", "Boring Company", "Neuralink", "Grok", "Palantir", "Anduril", and/or "conflict of interest".

32.     POGO requested a fee waiver explaining that it has no commercial interest in the records sought and that disclosure would significantly contribute to public understanding of the operations and ethical oversight of high-level political appointees and advisors within OMB. Specifically, POGO noted that the requested records concern how ethics restrictions are being applied to senior federal personnel, which are matters that bear directly on government integrity, potential conflicts of interest, and compliance with ethics rules. The records are not otherwise publicly available, and their release would meaningfully enhance public understanding of

whether officials in key decision-making roles are operating in accordance with applicable ethics laws.

33. POGO further explained that it qualifies as a representative of the news media under 5 U.S.C. § 552(a)(4)(A)(ii)(II), citing its mission as an independent nonprofit watchdog organization, its routine publication of investigative findings to the public and policymakers, and its dissemination of information through its website and other national media outlets. POGO emphasized that it intends to analyze and publish the responsive records for the benefit of the public, consistent with its nonpartisan mission to promote a more effective, ethical, and accountable federal government.

34. POGO also requested expedited processing of its FOIA request because the information in the requested documents is urgently needed to inform the public concerning some actual or alleged government activity.

35. POGO justified its request for expedited processing on the grounds that the information sought is urgently needed to inform the public about actual or alleged Federal Government activity. As explained in the request, the subject matter which includes staffing and advisory roles at the OMB, including individuals connected to the DOGE teams, raises urgent and pressing questions about the ethical operations of government, the integrity of agency decision-making, and the risk of influence by private commercial interests.

36. The request emphasizes that there is significant and timely public concern surrounding the involvement of individuals with ties to Elon Musk's business interests and the implications for agency operations, statutory compliance, and national security. The issues extend to real-time developments, including changes in federal communication protocols and the role of DOGE-affiliated advisors in shaping executive policy and undermining agency missions.

37. The request for expedition also highlighted that the records would shed light on who is exercising significant influence over federal policymaking through OMB, including their qualifications, job responsibilities, and any known ethical concerns. Given the widespread media interest and bipartisan concern over the influence of political appointees aligned with DOGE and the potential erosion of statutory and institutional norms, POGO argued that expedited processing is both necessary and appropriate under 5 U.S.C. § 552(a)(6)(E) and 5 C.F.R. § 1303.40(e).

38. In support of its request for expedition, POGO further explained that the organization qualifies as a member of the news media and that the request was made by a journalist with an established track record of disseminating information to the public through POGO's website and major national publications including TIME Magazine, The Washington Post, and others.

39. According to OMB's FOIA Office, POGO's request to expedite was received on May 16, 2025, and assigned a track number of 2025-1453.

40. On August 27, 2025, POGO inquired by email into the status of the request and an estimated date of completion.

41. On September 17, 2025, POGO inquired again, by email, into the status of the request and an estimated date of completion. POGO also narrowed the scope of the request to eliminate (a) 278e reports for all noncareer and limited-term senior executives who began on or after January 2025, and (b) from the request for communications, all email attachments, calendar invitations and calendar invitation attachments, text messages, and messages on messaging platforms, including those sent or received via Signal, Mattermost, Microsoft Teams, Slack,

GChat or Google Hangouts, Lync, Skype, X (formerly Twitter) direct messages, Facebook messages, WhatsApp, Telegram, or Parler.

42. On September 23, 2025, OMB's FOIA Office responded that the best estimate at this time for completing the processing of the request is 24 to 36 months, due to a significant increase in new FOIA matters, and requested that POGO check back in with OMB periodically. In its response, OMB's request did not acknowledge POGO's request to narrow its scope.

43. To date, POGO has not received any further communication from OMB regarding POGO's FOIA request, nor has OMB acted on POGO's request for expedition.

**PLAINTIFF'S CLAIM FOR RELIEF**

**COUNT ONE**
**(Failure to grant expedition)**

44. Plaintiff repeats and re-alleges paragraphs 1–43.

45. Plaintiff properly asked that OMB expedite the processing of Plaintiff's May 16, 2025 FOIA request to agency records related to the internal staffing of noncareer political appointees, special government employees, and individuals affiliated with DOGE, including ethics records, position descriptions, and specified communications involving high-level OMB officials, based on Plaintiff's showing of the urgency to inform the public concerning some actual or alleged government activity and that the request is made by a member of the media.

46. Defendant failed to act on Plaintiff's requests for expedition in the time mandated by the FOIA and failed to grant expedited processing of Plaintiff's May 16, 2025 FOIA request to OMB's records.

47. Plaintiff has exhausted all applicable administrative remedies with respect to Defendant's denial of Plaintiff's request for expedition.

48. Plaintiff POGO is therefore entitled to injunctive and declaratory relief with respect to the immediate and expedited processing and disclosure of the records requested in its May 16, 2025 FOIA request to OMB at no cost to Plaintiff.

## COUNT TWO
### (Wrongful Withholding of Non-Exempt Responsive Records)

49. Plaintiff repeats and re-alleges paragraphs 1–48.

50. Plaintiff properly asked for agency records within the possession, custody, and control of OMB.

51. Defendant OMB wrongfully withheld agency records requested by Plaintiff by refusing to process Plaintiff's requests on an expedited basis and wrongfully withholding records responsive to those requests.

52. Plaintiff POGO is therefore entitled to injunctive and declaratory relief with respect to the immediate processing and disclosure of records requested in its May 16, 2025 FOIA request at no cost to Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

(1) Order Defendant to immediately and fully process plaintiff's expedited May 16, 2025 FOIA requests and to disclose all non-exempt documents immediately and at no cost to Plaintiff;

(2) Issue a declaration that Plaintiff is entitled to the immediate and expedited processing and disclosure of the requested records at no cost to Plaintiff;

(3) Provide for expeditious proceedings in this action;

(4) Retain jurisdiction of the action to ensure no agency records are wrongfully withheld;

(5)     Award Plaintiff its costs and reasonable attorney's fees in this action; and

(6)     Grant such other relief as the Court may deem just and proper.

Respectfully submitted,

/s/Anne L. Weismann
Anne L. Weismann
(D.C. Bar No. 298190)
5335 Wisconsin Avenue, NW
Suite 640
Washington, DC 20015
(301) 717-6610
Weismann.anne@gmail.com

Dated: February 19, 2026                    *Attorney for Plaintiff*